IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ASHLEY INGRAM, *et al.*, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:21-cv-0720-RAH |
| | ) | [WO] |
| UNITED STATES OF AMERICA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# **MEMORANDUM OPINION AND ORDER**

Charles Ashley Ingram (Ashley), Dawn Ingram, and Charles Kenneth Ingram (Kent) (collectively, "the Ingrams") appeal from the final determination of the Director of the United States Department of Agriculture's (USDA) National Appeals Division concerning crop disaster payments they received in 2016 from the Noninsured Crop Disaster Assistance Program (NAP). The Agency[1] has moved for summary judgment. For the reasons below, the Agency's motion is due to be granted.

---

[1] The Ingrams have named as defendants the United States of America, the Farm Service Agency, the United States Department of Agriculture, and Tom Vilsack, Secretary of Agriculture. For purposes of this Opinion, the Court will refer to them collectively as the Agency.

1

## I. BACKGROUND

### A. Overview of NAP

NAP provides financial assistance to farmers of non-insurable crops to protect against natural disasters that prevent crop planting or result in lower yields or crop losses. NAP is administered under the general supervision of the Farm Service Agency (FSA) and is carried out by FSA state and county committees. 7 C.F.R. § 1437.2(a).

NAP program participants are required to notify the FSA within 72 hours after a crop loss occurs or first becomes apparent[2] to the participant, the purpose of which is to allow the FSA an opportunity to quickly inspect the deteriorating crop in the field and to make an appraisal. *See id.* § 1437.11(a). The participant must certify this date in his Notice of Loss along with other details regarding the crop loss. *Id.* § 1437.11(c)(2). The FSA then reviews this Notice of Loss and any supporting documentation to determine whether the participant qualifies for NAP benefits. *See generally id.* § 1437.11.

NAP benefits are available only to eligible producers, defined as "an owner, operator, landlord, tenant, or sharecropper, who shares in the risk of producing a crop and who is entitled to share in the crop available for marketing from the farm, or would have shared had the crop been produced." *Id.* § 718.2. The regulations in

---

[2] This date will also be referred to as "the loss date."

effect when the Ingrams submitted their NAP claims also required producers to "provide acceptable evidence, as determined by FSA, of . . . [a]n interest in the commodity produced or control of the crop acreage on which the commodity was grown at the time of disaster." *Id.* § 1437.8(c)(1) (2016).

FSA regulations employ a Finality Rule. Under the Finality Rule, a determination by an FSA state or county committee becomes final and binding 90 days after a producer files an application for benefits and the required supporting documentation. *Id.* § 718.306(a). If the FSA committee erroneously approves a claim for benefits, the Finality Rule bars the Agency from recovering that payment after 90 days unless an exception to the Finality Rule applies, such as if "[t]he determination was in any way based on erroneous, innocent, or purposeful misrepresentation; false statement; fraud; or willful misconduct by or on behalf of the participant." *Id.* § 718.306(a)(2),(b)(1).

### B.     The Ingrams' 2016 NAP Claims

Ashley and Dawn Ingram are married, and Kent is their adult son. Together, they operate Ingram & Ingram Farms, a family farm in Houston County, Alabama. In February 2016, Ashley purchased NAP coverage for green bell peppers for himself and on Kent's behalf. (Doc. 22-3 at 13–16; Doc. 23-3 at 14–15.) Dawn also purchased NAP coverage for green bell peppers. (Doc. 24-3 at 14–15.) Additionally, Dawn and Kent certified that they were beginning farmers, and Dawn

3

certified she was a socially disadvantaged farmer, (Doc. 23-3 at 16; Doc. 24-3 at 18), which qualified them both for a waiver of the NAP program service fee and a 50% discount of their premiums, *see* 7 C.F.R. § 1437.7(g).

After planting their green bell pepper crops between June 8–10, the Ingrams filed crop acreage reports stating that each of them held a 100% producer share in their respective bell pepper crop. (Doc. 22-3 at 31–32; Doc. 23-3 at 30; Doc. 24-3 at 32–33.)

On June 15, 2016, the Ingrams realized their green bell pepper seeds were not germinating. Ashley called the Houston County FSA office twice and was told to wait for rain in the hope that the seeds might germinate, (Doc. 25-1 at 201–02), which they did not. The next month, the Ingrams each filed a Notice of Loss certifying that their respective green bell pepper crop had suffered a loss due to drought and heat and identifying June 15, 2016, as the beginning date of the disaster and July 7, 2016, as the date the crop loss first became apparent. (Doc. 23-3 at 18–19; Doc. 22-3 at 18–19; Doc. 24-3 at 20–21.) An inspection followed on July 11, 2016, by a loss adjuster who later reported that he did not find any green bell pepper plants in any of the Ingrams' fields. (Doc. 22-3 at 22.)

The Houston County FSA Committee approved the Ingrams' claims in September 2016. Ashley received a payment of $53,622; Kent received a payment of $33,762; and Dawn received a payment of $67,523.

### C. FSA Reversal

Three years later in November 2019, the FSA reversed the Houston County FSA Committee's prior claim approvals. (Doc. 22-2 at 5–7; Doc. 23-2 at 5–7; Doc. 24-2 at 5–7.) It also sought to recoup the Ingrams' claim payments. In his letters to the Ingrams, the FSA deputy administrator stated that he had determined that drought and heat did not impact the Ingrams' crops as claimed and that the Ingrams' crop losses would have become apparent prior to July 7, 2016, because green bell pepper seeds "will germinate and emerge within approximately 10 days." (Doc. 22-2 at 6; Doc. 23-2 at 6; Doc. 24-2 at 6.) Therefore, according to the deputy administrator, the Ingrams had made misrepresentations that disqualified them from receiving payment on their claims.

Additionally, with respect to Kent's and Dawn's claims, the deputy administrator stated that neither individual held an actual risk in their respective crop because the submitted input receipts were billed to Ashley or Ingram & Ingram Farms, not Kent and Dawn. (Doc. 23-2 at 6; Doc. 24-2 at 6.) Thus, according to the deputy administrator, the risk of the crops actually belonged solely to Ashley or Ingram & Ingram Farms, and that the crops were placed in Kent's and Dawn's names as a way to avoid NAP program payment limitations applicable to Ashley.[3]

---

[3] NAP contains limitations on the payment amount each farmer can receive.

Characterizing the Ingrams' statements as misrepresentations and as part of a scheme to defeat the NAP payment limitation, the deputy administrator further stated that the Finality Rule did not bar the FSA from recouping the Ingrams' 2016 NAP payments three years after the fact or from prohibiting the Ingrams from participating in NAP for the 2017 and 2018 growing seasons.

### D.  NAD Administrative Judge's Decision

The Ingrams appealed the FSA's November 2019 decision to the National Appeals Division (NAD), an independent office within the USDA that conducts administrative appeals hearings of adverse program decisions.[4] After conducting an evidentiary hearing, an administrative judge issued a determination concluding that the Ingrams had not met their burden of proving that the FSA's adverse decision was erroneous.  (Doc. 22-2 at 172.) Specifically, the administrative judge found the record evidence supported the FSA's determination that drought and heat did not cause the Ingrams' crop losses, that the Ingrams had misrepresented the loss date, and that Kent and Dawn had misrepresented their status as eligible producers. (*Id.* at 168–171.)

---

[4] NAD is responsible for adjudicating specified administrative appeals from adverse decisions by certain agencies within the USDA, including the Commodity Credit Corporation, the Farm Service Agency, and the FSA state, county, and area committees, including appeals from the "[d]enial of participation in, or receipt of benefits under, any program of an agency[.]" *See* 7 U.S.C. §§ 6991–7002; 7 C.F.R. §§ 11.1, 11.3.

### E.     NAD Director Review

The Ingrams then appealed the administrative judge's decision for director review and requested equitable relief. Upon reviewing the record and the parties' submissions, the Director upheld the administrative judge's determination, finding it was supported by substantial evidence. (*Id.* at 239, 241.) In particular, the Director concluded the Finality Rule did not bar the Agency from recouping the Ingrams' 2016 NAP payments because the Ingrams had made misrepresentations concerning the loss date and, as to Kent and Dawn, their eligible producer status. (*Id.* at 238–39.) The Director also concluded the Ingrams were not entitled to equitable relief because they had not acted in good faith in relying upon the action or advice of an authorized agency official, nor did their ineligibility stem directly from the actions of an agency official. (*Id.* at 240–41.) The Ingrams then requested reconsideration of the Director's determination, which the Director denied, finding no material error of fact or law in his earlier determination. (*Id.* at 244–49.) The Director's determination constituted the Agency's final decision under 7 U.S.C. § 6999.

## II.     STANDARD OF REVIEW

Summary judgment "is particularly appropriate in cases in which a district court is asked to review a decision rendered by a federal administrative agency." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1253 (11th Cir. 2007). "However,

'even in the context of summary judgment, an agency action is entitled to great deference.'" *Id.* (citation omitted).

Judicial review of a final agency determination is governed by the Administrative Procedure Act, which provides in part that a court shall set aside an agency's "action, finding, and conclusion that is found to be arbitrary, capricious, an abuse of discretion, unconstitutional, in excess of statutory authority, without observance of procedure as required by law, or unsupported by substantial evidence." *Id.* (citing 5 U.S.C. § 706(2)); *see also* 7 U.S.C. § 6999; *Payton v. U.S. Dep't of Agric.*, 337 F.3d 1163, 1167 (10th Cir. 2003).

"To determine whether an agency decision was arbitrary and capricious, the reviewing court 'must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.'" *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990) (citation omitted). The arbitrary and capricious standard is "exceedingly deferential," *Fund for Animals, Inc. v. Rice*, 85 F.3d 535, 541 (11th Cir. 1996), and "[t]he reviewing court is not authorized to substitute its judgment for that of the agency concerning the wisdom or prudence of the" decision, *Skinner*, 903 F.2d at 1539. "Rather, the 'task of the reviewing court is to apply the appropriate . . . standard of review . . . to the agency decision based on the record the agency presents to the reviewing court.'" *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corp of*

*Eng'rs*, 87 F.3d 1242, 1246 (11th Cir. 1996) (alterations in original) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985)).

## III. DISCUSSION

The Agency moves for summary judgment, arguing the Ingrams have failed to properly develop their arguments before this Court and, as to one of several dispositive issues addressed by the Director—misrepresentation of the loss date—have altogether failed to address or even mention it in their appeal. The Agency further argues that substantial evidence supports the Director's determination concerning the misrepresentations made by the Ingrams and that the Director was within his discretion to deny the Ingrams the equitable relief that they requested.

The Court begins and ends with the Agency's abandonment argument; that is, whether the Ingrams have abandoned certain issues in this appeal, primarily the issue of whether they misrepresented the loss date. It has long been held that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resol. Tr. Corp v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc); *see also Boone v. City of McDonough*, 571 F. App'x 746, 751 (11th Cir. 2014) (explaining that plaintiff abandoned claim asserted in complaint but not argued at the summary judgment stage). In their petition for judicial review, the Ingrams claim the Director's decision was erroneous, including his decision with respect to the loss date issue. But in their

summary judgment opposition brief, which spans only three pages, the Ingrams merely cite rules without any record citations, argument, or showing as to how the Director erred in his decision. Other than citing the regulatory definition of who qualifies as a producer and the statutory basis on which the Director may, in his discretion, grant equitable relief, the Ingrams do not provide any substantive arguments supporting their petition for judicial review. Instead, in an extremely conclusory fashion, the Ingrams simply argue that the Agency erred. And as to the issue of whether the Director erred in affirming the administrative judge's decision about the Ingrams' misrepresentation of the loss date, the Ingrams make no mention of it whatsoever. That issue, itself, is a dispositive one as it concerns the Finality Rule and the Agency's ability to recoup the Ingrams' 2016 NAP payments. Accordingly, the Court concludes that the Ingrams have abandoned any argument they have that the Director acted arbitrarily, capriciously, or otherwise in error in upholding the decision of the administrative judge. It follows that the Director's decision is due to be affirmed.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED** as follows:

1. The Defendants' *Motion for Summary Judgment* (Doc. 31) is **GRANTED**;

2. The appeals determination of the Director of the National Appeals Division is **AFFIRMED**; and

3. The Clerk of Court is directed to enter judgment in favor of Defendants United States of America, the Farm Service Agency, the United States Department of Agriculture, and Tom Vilsack, Secretary of Labor, and to close this file.

**DONE**, on this the 24th day of February, 2023.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE